UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                     :
CHRISTOPHER ROSS,                    :
                  Plaintiff,         :
                                     :
     -v-                             :    10 Civ. 3937 (DLC)
                                     :
WESTCHESTER COUNTY JAIL,             :      OPINION & ORDER
WESTCHESTER COUNTY DEPARTMENT OF     :
CORRECTIONS MEDICAL DEPARTMENT,      :
WARDEN ANTHONY AMICUCCI, CAPTAIN     :
RAY RHODES, CAPTAIN SOYCHEK,         :
SERGEANT MARTINEZ, SERGEANT          :
SCHMIDT, SERGEANT DEL TRESTE,        :
SERGEANT BELL, SERGEANT WOODS,       :
SERGEANT COLEY, SERGEANT MACCABEE,   :
OFFICER BURGES, MEDICAL LIAISON      :
JUNE YOZZO,                          :
                  Defendants.        :
                                     :
------------------------------------- X

APPEARANCES:

For pro se plaintiff:
Christopher Ross
#08076
Westchester County Jail
P.O. Box 10
Valhalla, NY 10595

For defendants:
Christine Lynne D'Alessio
Assistant County Attorney
Westchester County Attorney's Office
148 Martine Avenue
White Plains, NY 10601

DENISE COTE, District Judge:

Plaintiff Christopher Ross ("Ross"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 for injunctive relief and compensatory damages against the Westchester County Jail ("Jail"), the Westchester County Department of Corrections Medical Department ("Medical Department") and twelve officers and employees at the Jail.  Ross principally alleges that the defendants failed to provide adequate medical care for his sleep apnea; denied his Freedom of Information Law ("FOIL") requests; falsified documents; retaliated against him for the filing of grievances and this action; and violated his right to medical privacy under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 29 U.S.C. § 1182, the Fourteenth Amendment, and state law.[1]

The defendants have filed a motion under F.R.C.P. 12(b)(6), to dismiss Ross's amended complaint.  For the following reasons, the motion is granted in part.  The claims against all the individual defendants are dismissed.

---

[1]   Ross's allegations of violations of his right to medical privacy and HIPAA are contained in his opposition to the defendants' motion.

2

BACKGROUND

The following facts are taken from Ross's February 24, 2011 amended complaint or his opposition to the motion to dismiss and assumed to be true for the purposes of this motion.  On August 14, 2009, Ross arrived at the Jail and informed a Nurse Practitioner that he had recently been released from Greenwich Hospital and suffered from cardiomyopathy, high blood pressure, hypertension and sleep apnea.  Ross explained that he had had a catheterization procedure to inspect the left side of his heart for blockage because he had cognitive heart failure.  Ross provided the medical staff with a list of prescribed medications.

December 2009 Grievance and Lack of Treatment for Sleep Apnea

On December 5, Ross filed a grievance ("December 2009 Grievance") requesting a continuous positive airway pressure machine ("CPAP") for his sleep apnea.  Later that day, he was examined by a Nurse Practitioner who told him that he should see a doctor.  On December 7, Ross was seen by Dr. Goldberg and transferred from the Special Housing Unit ("SHU") to the infirmary where he was given access to an outdated bi-level positive airway pressure machine ("Bi-PAP").

On December 8, Sgt. Schmidt ("Schmidt") rejected Ross's December 2009 Grievance as unsubstantiated.  Ross asserts that

3

this decision was based on a report by Medical Liaison June
Yozzo ("Yozzo") that falsely stated that Ross had previously
refused to be housed in the infirmary and to use the CPAP
machine on August 14 and December 5, 2009.

On December 11, Sgt. Martinez ("Martinez") delivered to
Ross a memorandum from Warden Anthony Amicucci ("Amicucci")
answering the December 2009 Grievance.  The next day, however,
Martinez came back to retrieve the memorandum, stating that
Amicucci needed it back.  Ross asked Martinez about a statement
in the memorandum suggesting that he had previously refused the
CPAP but was now requesting it to get out of SHU.[2]  Martinez told
him not to worry about it because he had won his grievance.

After Martinez retrieved the original memorandum decision
on the December 2009 Grievance, Ross requested a copy of the
memorandum and was instructed by Martinez to fill out a FOIL
request for copies of the grievance file.  On December 11, Ross
filed a FOIL request for the grievance file and on December 22,
three dollars were deducted from his inmate account for the FOIL
request.

---

[2]    The memorandum stated, "[o]ddly the CPAP machine was offered
to you again on the same day you filed your grievance.  It would
seem that the reemergence of your condition has coincided with
your disciplinary problem that landed you in the SHU.  It now
seems that you are accepting the offer because you get relocated
to the infirmary."

On December 18, Sgt. Woods ("Woods") brought the appeal portion of the December 2009 Grievance to Ross and asked him if he still wanted to appeal.  Ross indicated that he would like to appeal.  Later that day, Sgt. Burligham brought back a copy of the memorandum but the language in it had been changed and Amicucci's initials were now omitted ("Altered Memorandum").  Ross was told that the Altered Memorandum had come from Captain Rhodes ("Rhodes").

On January 12, 2010, Captain Soychek ("Soychek") approached Ross and called him a "scammer" in the presence of Correction Officer Mack, who is not a member of the medical staff, and other prisoners, and "threaten[ed] [him] in a hostile manner."  Soychek told him that he had faked his medical condition to get out of SHU "but he was going to make it his business to have [Ross] back in the SHU."

On January 17, Ross filed a grievance, number J-14-10 ("January 2010 Grievance") claiming that the memorandum responding to the December 2009 Grievance had been altered.  Ross later accused Rhodes of tampering with the memorandum.

On January 20, Ross filed a FOIL request for his medical records.  The fee was deducted from his inmate account on January 22, and he received the records on January 27.

That same day, Amicucci stated in response to Ross's appeal of the December 2009 Grievance, that he had been placed in the infirmary because of the medical staff's assessment of his medical condition, not because of the grievance he had filed. Ross claims that the defendants only provided him with treatment for his sleep apnea because he filed the December 2009 Grievance.

February 2010 Grievance

On February 16, 2010, Ross filed a grievance, number J-29-10 ("February 2010 Grievance"), concerning the denial of his FOIL request for copies of the file of the December 2009 Grievance.  On February 22, Sgt. Del Treste ("Del Treste") informed Ross that his February 2010 Grievance was denied because he had not filed it within five days of the act or occurrence giving rise to the grievance.  Ross told him that the February 2010 Grievance was based on a letter he had written to the cashier about not receiving the copies of the December 2009 Grievance.

Later that day, Ross had a conversation with Rhodes, who was accompanied by Yozzo, about the February 2010 Grievance. Rhodes asked why Ross was complaining, as he had already received his medical records.  Ross explained that his February 2010 Grievance was not about the medical records, but about not

receiving copies of the December 2009 Grievance file that he had
paid for.  Ross also asked Rhodes why he had altered the
decision on the December 2009 Grievance, at which point Rhodes
became hostile, started screaming and left.

On February 23, Del Treste gave Ross an "addendum" stating
that copies of his medical records were being provided to him as
a courtesy.  Ross informed him that his February 2010 Grievance
did not concern the medical records and that he wanted a refund
because he had been refused copies of his December 2009
Grievance file.  Ross then asked Del Treste to read to him what
the February 2010 Grievance was about, but Del Treste became
extremely hostile and said "I don't have to do this shit I am
not your Mother or Father."  When Ross informed him that Ross's
parents were deceased, Del Treste said he didn't care and called
Ross a "dumb nigger."  On February 24, Amicucci denied Ross's
FOIL request.  Ross asserts that this was an attempt to cover-up
the creation of the Altered Memorandum.

March 2010 Grievance Concerning Bi-PAP

On March 18, Ross filed another grievance stating that he
was experiencing difficulty breathing and sleeping at night in
the infirmary ("March 2010 Grievance").  Ross claimed that the
Bi-PAP machine was outdated and the pressure setting, which had
not been set by a medical technician or doctor during the three

months he had been using the machine, was not working properly.
Ross requested that his sleep apnea be tested with a Nocturnal
Polysomnography, Oximetry or Portable Cardiorespriratory, and
sought a referral to an otolaryngologist and a sleep study
specialist to get a proper prescription for adjustment of the
Bi-PAP machine.  Ross's grievance was denied.

<u>May 2010 Davis Visit</u>

On May 8, Ross's fiancée, Caroline Davis ("Davis"),
attempted to visit Ross at the Jail.  When she arrived at the
entry point, she was harassed by Correction Officer Burges
("Burges"), who told her that Ross did not have a scheduled
visit.  When she informed him that the visit had been switched,
Burges replied "Oh Ross that's the guy who hit the guy in the
head with a chair.  He is in I-Block (Infirmary) faking like he
got sleep apnea."  When Davis attempted to leave money for Ross,
she was told she could not leave money because Ross did not have
a scheduled visit.

On May 12, Ross filed a grievance ("May 2010 Grievance")
with Bell and wrote a formal complaint to the Department of
Health and Human Services about the incident with Davis.  On May
18, Sgt. Bell ("Bell") made false statements in his report about
the incident with Davis.  When Ross tried to submit a statement
from Davis stating that she was harassed by Burges, Bell refused

to accept it.  Bell informed Ross that he had spoken to Sgt. Maccabee ("Maccabee"), who stated that Davis had refused to make a statement.  Ross told Bell that was a "bold face lie" and that Davis had made several attempts to call someone at the Jail to complain but that she had been "given the run around."  On May 20, Ross submitted a letter about these false statements to the Westchester County Executive's Office, the Westchester County Department of Health, the New York State Commission of Correctional Services, and the Department of Health and Human Services.

June 2010 Efforts to Review Medical Records

On June 28, Ross attempted to file another grievance concerning the refusal to allow him to review his medical records, but Woods refused to take it.  Ross was also told that he could not review his medical records or get a sleep study number from the doctor's office.  Ross complained to Block Officer Freeman, who filed the grievance in the infirmary log book.

On June 29, Ross filed another grievance with Sgt. Coley ("Coley") about the continuing failure to adjust the Bi-PAP machine ("June 2010 Grievance").  Ross also complained that Yozzo had told him that he could not review his medical records without first paying for the entire medical file.  Coley told

9

him that he would take the June 2010 Grievance so that he would not get suspended.  The next day, however, Coley returned the June 2010 Grievance and stated that Ross had previously grieved the same issue.  Ross tried to explain that although the medical issues were the same, the Bi-PAP machine was different and he had the right to review his medical file.  Coley became hostile and verbally abused Ross, saying he was a "fat piece of shit, who thinks [he's] a lawyer and that he would kick [Ross's] ass if their [sic] were not camera's [sic] watching."

Ross Files Federal Lawsuit in May 2010

On May 12, 2010, Ross commenced this lawsuit.  The complaint was first served on several of the defendants on June 17.  In an August 16 letter to the defendants, Ross requested permission to amend his complaint.  Ross was directed to file an amended complaint by November 19.  Ross did not file an amended complaint, and on January 13, 2011, the defendants moved to dismiss all claims in the complaint.  On February 4, a pre-trial conference was held, and Ross was permitted to file an amended complaint.  Ross filed the amended complaint ("Complaint") on February 24.  The defendants then renewed their motion to dismiss, which became fully submitted on July 26.

DISCUSSION

     "Under Federal Rule of Civil Procedure 8(a)(2), a pleading
must contain a 'short and plain statement of the claim showing
that the pleader is entitled to relief.'"  Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, "a
complaint must contain sufficient factual matter, accepted as
true, to state a claim to relief that is plausible on its face."
Id. (citation omitted).  Applying this plausibility standard is
"a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  Id. at 1950.

     When considering a motion to dismiss under Rule 12(b)(6), a
trial court must "accept all allegations in the complaint as
true and draw all inferences in the non-moving party's favor."
LaFaro v. New York Cardothoracic Group, PLLC, 570 F.3d 471, 475
(2d Cir. 2009).  Moreover, pleadings filed by pro se plaintiffs
are to be construed liberally.  Chavis v. Chappius, 618 F.3d
162, 170 (2d Cir. 2010) (citation omitted).  The rule favoring
liberal construction of pro se submissions is especially
applicable to civil rights claims.  See Weixel v. Bd. of Ed. of
the City of New York, 287 F.3d 138, 146 (2d Cir. 2002).  A
complaint must do more, however, than offer "naked assertions
devoid of further factual enhancement," and a court is not

"bound to accept as true a legal conclusion couched as a factual
allegation." Iqbal, 129 S. Ct. at 1949-50.

Accordingly, a court may disregard "threadbare recitals of
a cause of action's elements, supported by mere conclusory
statements." Id. at 1940.  In determining the adequacy of a
complaint "a district court may consider the facts alleged in
the complaint, documents attached to the complaint as exhibits,
and documents incorporated by reference in the complaint."
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

In their motion to dismiss, the defendants identify four
reasons why Ross's Complaint should be dismissed.  They are that
the Complaint fails:  (1) to state a claim; (2) to allege that
the defendants were personally involved in the alleged
violations; and (3) to allege that Westchester County
promulgated a policy or custom resulting in the violation of
Ross's rights.  They also assert that the individual defendants
are entitled to qualified immunity.

A.   Deliberate Indifference to Serious Medical Needs

Ross asserts a claim against Westchester County[3] for
deliberate indifference to his serious medical needs in

_____

[3]    Ross named the Jail and the Medical Department as
defendants.  These defendants do not, however, have legal
identities separate and apart from the County and, therefore,
cannot be sued.  Jones v. Westchester Cty. Dep't of Corr. Med.

violation of his Eighth and Fourteenth Amendment rights.[4]  "There
are two elements to a claim of deliberate indifference to a
serious medical condition: [t]he plaintiff must show that [he]
had a 'serious medical condition' and that it was met with
'deliberate indifference.'"  Caiozzo, 581 F.3d at 72 (citation
omitted); see also Hill v. Curcione, 657 F.3d 116, 122-23 (2d
Cir. 2011); Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir.
2006).  Deliberate indifference is a mental state akin to
"recklessness," and is measured using a "subjective test" that
discerns whether the defendant was "actually aware of an
excessive risk to an inmate's health or safety," Caiozzo, 581
F.3d at 69, and therefore "act[ed] with a sufficiently culpable
state of mind."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.
1996).[5]

---

Dep't, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008).

[4]    The defendants represent that Ross was a pretrial detainee
during the events in question.  The Eighth Amendment does not
apply to a pretrial detainee.  Caiozzo v. Koreman, 581 F.3d 63,
69 (2d Cir. 2009).  Nonetheless, "[c]laims for deliberate
indifference to a serious medical condition . . . should be
analyzed under the same standard irrespective of whether they
are brought under the Eighth or Fourteenth Amendment."  Id. at
72.

[5]    In his opposition to this motion, Ross asks the Court to
consider the U.S. Department of Justice Investigation Report
issued on November 19, 2009, regarding conditions at the Jail.
"In considering a motion to dismiss for failure to state a
claim, a district court must limit itself to the facts stated in
the complaint, documents attached to the complaint as exhibits

13

"As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Id. (citing Farmer v. Brennan, 511 U.S. 825, 844-47 (1994)).  An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable.  Estelle v. Gamble, 429 U.S. 97, 107 (1976).  Furthermore, a "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Hill, 657 F.3d at 123 (citation omitted).  Nonetheless, even if a plaintiff receives "extensive" and "comprehensive, if not doting, health care," he may still be able to identify deficiencies in care that establish a deliberate indifference claim, particularly when the issue is a failure to treat pain.  Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984).

Ross's allegations are sufficient to state a claim against the County for deliberate indifference to a serious medical need.  Sleep apnea may be a life-threatening disorder.  Ross alleges that it causes him to stop breathing while he sleeps.  Ross also alleges that although the medical staff was informed

---

and documents incorporated by reference in the complaint." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006). Therefore, the report will not be considered in deciding this motion.

about his sleep apnea when Ross arrived at the Jail on August 14, 2009, Westchester County failed to provide him any treatment for over three months and that the Bi-PAP machine he was given on December 7, 2009, was not properly adjusted for his prescription.  Ross does not seek to hold any individual defendant liable for these medical claims, rather he seeks to hold the County responsible for the deliberate indifference to his medical needs.

Ross's remaining allegations regarding his medical treatment at the Jail, however, must be dismissed.  His complaints that the Bi-PAP machine he was given to use on December 7 was not a state-of-the-art machine, that he was not referred to an otolaryngologist or a sleep study specialist, and that his illness was not tested with specific kinds of tests, constitute mere disagreements with a course of treatment and fail to state a claim.  See Hill, 657 F.3d at 123.

B.   Retaliation Claims

Ross alleges that the defendants retaliated against him for filing grievances and this § 1983 lawsuit by verbally threatening him on several occasions, harassing Davis when she attempted to visit him, and interfering with his ability to file further grievances.  Ross has not alleged a retaliation claim.

15

To establish a First Amendment claim of retaliation, a plaintiff must show:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted).  Because of the "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which these claims of retaliation may be fabricated," Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995), "courts must approach prisoner claims of retaliation with skepticism and particular care."  Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (citation omitted).

In the prison context, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted).  "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection."  Id. (citation omitted).  "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."  Gill v. Pidlypchak, 389 F.3d

16

379, 381 (2d Cir. 2004).  When considering a prisoner's retaliation claims, the court must bear in mind that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Davis, 320 F.3d at 353 (citation omitted).

In order to satisfy the causation requirement, a plaintiff must allege facts suggesting that the protected conduct "played a substantial part in the adverse action."  Dawes, 239 F.3d at 492.  "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."  Espinal, 558 F.3d at 129.

It is undisputed that Ross has satisfied this first prong of a retaliation claim.  The First Amendment protects prisoners from retaliation for the filing of grievances and lawsuits.[6]  See id.  As described below, however, Ross's pleadings do not allege conduct on the part of individual defendants that rises to the level of adverse action.

_____

[6]    To the extent any of Ross's retaliation claims are premised solely on the filing of this lawsuit, however, all those acts of retaliation that are alleged to have occurred before June 17, 2010, must be dismissed.  Ross alleges multiple acts by the defendants that occurred between January 12, 2010 and June 30, 2010.  Ross filed this action on May 12, 2010, and first served it on a defendant on June 17, 2010, well after most of the alleged retaliatory acts had taken place.

17

The threats and hostile comments that Ross alleges were made by Soychek, Del Treste and Coley are insufficient to establish a constitutional violation.[7]  Non-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim.  Morales v. Mackalm, 278 F.3d 126, 131-32 (2d Cir. 2002) (calling prisoner a "stoolie" in the presence of fellow inmates), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002); Dawes, 239 F.3d at 493 (calling a prisoner a "rat" or "informant"); see also Davis, 320 F.3d at 353; Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000) (rudeness and name-calling).  Ross does not allege threats and comments by these three defendants that were direct and specific enough to deter a prisoner from exercising his First Amendment rights.  See Gill, 389 F.3d at 381.

Ross's claims of retaliatory conduct by Burges also fail to satisfy the adverse action standard.  Ross alleges that Burges divulged his sleep apnea condition to Davis, "harassed" her when she attempted to visit Ross at the jail, and prevented her from seeing him or making deposits in his commissary account

---

[7]  Although Ross claims that Rhodes was hostile and screamed at him, Ross does not allege that Rhodes did so with a retaliatory intent.

18

asserting, erroneously, that her visit was unscheduled.
Burges's alleged disclosure of Ross's sleep apnea condition does
not constitute an adverse action because, as discussed below,
sleep apnea is not an intimate or shameful condition whose
disclosure is likely to result in acts of discrimination or
intolerance.  Likewise, even if Burges's alleged harassment of
Davis could be construed as an indirect effort to deter Ross
from exercising his First Amendment rights, as noted above, such
stray remarks do not satisfy the adverse action requirement.
See Morales, 278 F3d at 131-32.  Nor can it be said that the one
occasion on which Burges prevented Davis from visiting Ross or
making deposits into his commissary account constituted conduct
"that would deter a similarly situated individual of ordinary
firmness from exercising his [] constitutional rights."  Davis,
320 F.3d at 353.  Ross does not allege that Burges regularly
denied him visitations or that the isolated incident involving
Davis resulted from bad faith rather than from an innocent
misunderstanding regarding the date for which her visit had been
scheduled.

     Ross's retaliation claim against Bell fares no better.
Ross asserts that Bell authored a report that falsely stated
that Davis never sought to make a complaint.  It is true that
the filing of a false report may be actionable if made in

19

retaliation for a prisoner's exercise of his constitutional rights.  <u>Gill</u>, 389 F.3d at 380; <u>Boddie v. Schneider</u>, 105 F.3d 857, 862 (2d Cir. 1997).  Bell's alleged actions, however, are simply <u>de minimis</u> and fall outside the ambit of constitutional protection.  <u>Davis</u>, 320 F.3d at 353.  Ross does not articulate any particular harm that he suffered as a result of Bell's actions that would likely deter a similarly situated person of ordinary firmness from continuing to file grievances.

Ross's remaining retaliation claim[8] is against Woods for refusing to file a grievance that Ross submitted to him on June 28, 2010.[9]  The refusal to file a single grievance is, without more, insufficient to constitute an adverse action.  A refusal to file a single grievance is not the kind or retaliatory act which deter a prisoner of "ordinary firmness" from filing other grievances.  <u>Id.</u>

---

[8]     Although Ross alleges that Yozzo denied him his right to review his medical file and Sgt. Coley returned his June 2010 Grievance, Ross does not allege that Yozzo and Coley acted with retaliatory intent.

[9]     Ross asserts in his opposition to the motion to dismiss that the Jail has failed to maintain an adequate detainee grievance system.  To the extent Ross seeks to raise a stand-alone claim based on the prison grievance process and its failure to properly investigate his grievances, it must be dismissed.  A claim of violation of a state grievance procedure is not cognizable under § 1983 because prison grievance procedures are not constitutionally mandated.  <u>See</u> <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam).

C.   False Statements in Documents

Ross alleges that defendants Amicucci, Rhodes, Yozzo, Bell and Maccabee created documents containing false accusations and statements.  A prisoner has no "general constitutional right" to be free from false accusations.  <u>Boddie</u>, 105 F.3d at 862.  To violate a plaintiff's constitutional rights, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right."  <u>Id.</u>  The claims based on the assertion that certain defendants created reports with false statements are therefore dismissed.

D.   Denial of FOIL Request

Ross claims that the defendants improperly denied his FOIL request for copies of the December 2009 Grievance.  This is construed as a claim that Ross was deprived of property without due process of law.  "In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."  <u>Perry v. McDonald</u>, 280 F.3d 159, 173 (2d Cir. 2001) (citation omitted).

Ross does not have a property interest in obtaining documents under FOIL.  <u>See</u> <u>Papay v. Haselhuhn</u>, No. 07 Civ. 3858 (LAP), 2010 WL 4140430, at *7 (S.D.N.Y. Oct. 21, 2010); <u>O'Bradovich v. Village of Tucahoe</u>, 325 F. Supp. 2d 413, 432 (S.D.N.Y. 2004).  FOIL documents are not produced as of right

21

but only after request and investigation by the state entity. See N.Y. Pub. Off. Law §§ 84-89. A plaintiff therefore has only an expectation of receipt of such documents.  See O'Bradovich, 325 F. Supp. 2d at 432-33.  Because Ross has no property interest in the FOIL documents, the defendants' failure to provide the requested documents does not constitute a violation of Ross's constitutional rights.

Even if Ross had a constitutionally protected interest in obtaining documents pursuant to FOIL, his due process claim would still fail.  Whether or not the denial of his FOIL request is considered "random and unauthorized," Rivera-Powell v. New York City Bd. Of Elections, 470 F.3d 458, 465-67 (2d Cir. 2006), New York's Article 78 procedures constitute an adequate post-deprivation remedy for an alleged FOIL violation.  See Harris v. Mills, 572 F.3d 66, 76 (2d Cir. 2009).

E.   HIPAA and Medical Privacy Claims

Ross alleges that the defendants violated HIPAA and his right to medical privacy by improperly disclosing his medical information.  Ross bases his claims on three alleged disclosures: Soychek's discussing his medical condition in the presence of another correction officer and other prisoners and calling him a "scammer"; Rhodes's and Yozzo's discussing his

medical condition; and Burges's assertion to Davis that Ross was "faking like he got sleep apnea."

Although HIPAA generally provides for the confidentiality of medical records, 42 U.S.C. §§ 1320d-1 to d-7, an individual cannot sue for its enforcement or for damages caused by disclosures. See Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006); Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am., 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases). Only the Secretary of Health and Human Services or other government authorities may bring a HIPAA enforcement action. See 42 U.S.C. § 300gg-22. Therefore, Ross's HIPAA claim against Soychek, Rhodes, Yozzo and Burges is dismissed.

Nor can Ross convert this claim into a claimed violation of his constitutional rights. The Fourteenth Amendment Due Process Clause protects prisoners from the unwanted disclosure of certain medical information. See Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63-64 (2d Cir. 2011). A prisoner's right of privacy varies depending on the medical condition. Greater protection is afforded to conditions that are "excruciatingly private and intimate in nature," such as HIV status and transsexualism. Id. at 64 (citation omitted).

Ross's claims regarding the disclosure of his sleep apnea do not state a constitutional violation. Sleep apnea is not an

intimate or shameful condition that may expose those who suffer it to discrimination and intolerance.  Ross's medical privacy claim against Soychek, Rhodes, Yozzo and Burges is therefore dismissed.

Finally, Ross alleges that the defendants violated Public Health Law § 2780 by disclosing his medical condition.  N.Y. Public Health Law §§ 2780-2787 sets forth a comprehensive scheme for dealing with HIV and AIDS related information.  Because Ross does not bring a claim based on those conditions his Public Health Law § 2780 is dismissed.

F.   Personal Involvement

The defendants further argue that Ross fails to provide sufficient factual support showing the defendants' personal involvement in any constitutional wrongdoing.  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights."  Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011) (citation omitted).  A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his rights.  Martinez v. California, 444 U.S. 277, 285 (1980).  Accordingly, it is "well settled" that the "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted).  When it comes to claims of deliberate indifference to serious medical needs, a plaintiff must show such indifference on the part of a "particular defendant." Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

The only claim that has survived the motion to dismiss is the claim against Westchester County for deliberate indifference to Ross's medical needs.  Ross does not allege that any of the individual defendants had any part in the failure to provide him medical treatment for his sleep apnea for three months and the improper calibration of the Bi-PAP machine he was given on December 7, 2009.  The claims against each of the individual defendants are therefore dismissed.

G.   Municipal Liability

Finally, the defendants argue that Ross has failed to allege a municipal policy or custom to support the remaining deliberate indifference to medical need claim against Westchester County.  "Section 1983 'imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights.'" Okin v. Village of Cornwall-on-Hudson Police Dep't., 577 F.3d 415, 439

(2d Cir. 2009) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978).

> Monell does not provide a separate cause of action for
> the failure by the government to train its employees;
> it extends liability to a municipal organization where
> that organization's failure to train, or the policies
> or customs that it has sanctioned, led to an
> independent constitutional violation.

Id. (citation omitted).  Municipal liability may spring from a single action.  See, e.g., Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

Ross has alleged facts sufficient to state a claim of municipal liability.  He alleges that the Westchester Department of Corrections medical staff does not have an adequate system to identify prisoners with medical needs and make sure they are properly treated.  Ross has asserted that this defendant did not treat his sleep apnea for over three months and that the Bi-PAP machine he was given on December 7, 2009, was not properly adjusted for his condition.  These are plausible claims of deliberate indifference to his serious medical needs.  Ross's allegations are therefore sufficient to sustain his claim of deliberate indifference to his medical needs against Westchester County.

CONCLUSION

The defendants' June 6, 2011 motion to dismiss is granted in part.  All of the claims against the individual defendants are dismissed.  Ross's claims based on retaliation, the creation of documents with false statements, the denial of FOIL requests, and HIPAA and medical privacy are dismissed.  The motion to dismiss Ross's claim of inadequate medical care against Westchester County is denied to the extent described herein. The Clerk of Court will amend the caption to add Westchester County and remove Westchester County Jail and Westchester County Department of Corrections Medical Department as defendants.

SO ORDERED:

Dated:    New York, New York
          January 11, 2012

_____
DENISE COTE
United States District Judge

Copies sent to:

Christopher Ross
#08076
Westchester County Jail
10 Woods Rd.
P.O. Box 10
Valhalla, NY 10595

Matthew I. Gallagher
Christie L. D'Alessio
Office of the County Attorney
148 Martine Avenue, Room 600
White Plains, NY 10601